# IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF ILLINOIS

JOHN LAVIN,                                    )
                                               )
          Plaintiff,                         )
                                               )
vs.                                            )        CIVIL NO. 09-cv-477-MJR
                                               )
WARDEN HULICK, et al.,                         )
                                               )
          Defendants.                        )

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

Plaintiff John Lavin, currently an inmate in the Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983.

### ADMINISTRATIVE MATTERS

After filing his original complaint (Doc. 1), Lavin filed a motion to amend (Doc. 7), which was granted, and his amended complaint was filed (Doc. 11). Upon careful review of this pleading, it appears that this "amended complaint" is not actually a full complaint; rather, it is a supplement in which he merely provides more detailed address information for Defendants Priddy, Hulick, Krause, Snyder, King, Ho, Grubman, Walker, Bendinger, Summers, and Wexford Health Services.

Still pending before the Court is another motion for leave to amend the complaint (Doc. 10). In this motion, he seeks just correction of the record to reflect those corrected addresses. He also seeks to supplement his *in forma pauperis* motion with the updated trust-fund account statement that was submitted with his first motion to amend (*see* Docs. 7, 11). The Court construes this pleading as simply a motion to supplement the record and, as such, it is **GRANTED**. The Clerk is

**DIRECTED** to update the docket of this action to include the updated address information provided in the "amended complaint" (Doc. 11).  The Clerk is **FURTHER DIRECTED** to designate this "amended complaint (Doc. 11) as a **SUPPLEMENT TO THE COMPLAINT**.

This action now stands on the original complaint (Doc. 1), which is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> > (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A.  An action or claim is frivolous if "it lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007).  Upon careful review of the complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal.

## THE COMPLAINT

In 2003, Lavin filed a lawsuit in this District against 16 defendants regarding use of excessive force and denial of medical treatment at Menard.  *See Lavin v. Hulick*, Case No. 03-cv-503-DGW (S.D. Ill., filed Aug. 5, 2003).  In June 2007, Lavin was transferred from Western Illinois Correctional Center to Menard due to a trial date set for June 25, 2007.  When he arrived at Menard on June 20, 2007, Lavin was strip-searched and allowed to dress.  Lavin states that Prange placed

him in handcuffs, squeezing the cuffs tightly into his wrist.  Prange then threw him against a wall, causing Lavin's glasses to fly off his face.  Lavin asked for his glasses back but was refused.  Lavin also asked to be taken to the medical unit for injuries sustained from his collision with the wall; this request was denied by Prange, Best and Priddy.  While escorting Lavin to his cell, Best and Priddy refused to loosen his cuffs, and Best clamped them tighter.  Krause then grabbed his cuffs and pushed downward on Lavin's upper back, holding him in that position as Krause took him to segregation.  Lavin asked for the cuffs to be loosened, and to be taken to the medical unit; Krause refused these requests.

On June 20, 2007, Lavin received disciplinary tickets from Prange and Best for insolence and disobeying a direct order.  A hearing was held on July 4; Defendants Graig and Johnson found him guilty, and he was punished with two months in segregation, two months at C-grade, and two months commissary restriction.

Lavin alleges that the conditions in segregation were unbearable.  He specifically states that his window would not open, and thus it got extremely warm in his cell.  He also complains about defective plumbing and general sanitation, and that he was not provided with cleaning supplies.

Lavin's civil trial in federal court concluded on June 28, 2007.  That same day, he alleges that he was assaulted by Bedinger, one of the defendants in that action.  Lavin states that Bedinger kneed him in the testicles.

Lavin also complains about his medical treatment, or lack thereof, with regard to two different conditions.  His primary complaint is the denial of medical treatment with regard to the assault by Prange on June 20.  His other medical complaint involves replacement of his eyeglasses, which were broken on June 20 when he was assaulted by Prange.

Lavin states that he was scheduled to return to Western CC on June 29, following completion of his federal court trial. However, he was kept at Menard until July 11.

In the complaint, Lavin presents eight separate, enumerated claims that are actually contained in 58 pages of attachments (Docs. 1-1, 1-2), supplemented by over 50 pages of exhibits (Docs. 1-3, 1-4, 1-5) and a 73-page supplement (Doc. 2). Many of these claims overlap. To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(f) and 10(b), the Court finds it appropriate to separate these claims, as discussed below, following Lavin's organization as much as possible. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.

## COUNT 1

Lavin's first claim involves the use of excessive force by Prange, Krause, Best and Priddy on June 20. As summarized above, Lavin alleges that Prange through him against a wall, then handcuffed him. Best and Priddy refused to loosen the cuffs and, in fact, squeezed them tighter. Krause then pushed him forward, yanked on the cuffs, and refused to loosen them.

The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under Section 1983. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. An inmate

seeking damages for the use of excessive force need not establish serious bodily injury to make a claim, but not "every malevolent touch by a prison guard gives rise to a federal cause of action. . . . [the] prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* at 9-10; *see also Outlaw v. Newkirk*, 259 F.3d 833, 837-38 (7th Cir. 2001).

At this time, the Court is unable to dismiss any portion of this excessive force claim.

## COUNT 2

On June 20, Prange and Best issued disciplinary tickets for insolence and disobeying a direct order. The hearing was held on July 4 before Defendants Graig and Johnson, who found Lavin guilty. Lavin was punished with two months in segregation, two months reduction to C-grade, and two months loss of commissary privilege. He filed grievances over this matter, which were not resolved by Summers, Hulick, Snyder or Walker. Lavin asserts that he did not receive timely notice of the charges against him, and thus had no advance notice of the hearing.

When a plaintiff brings an action under § 1983 for procedural due process violations, he must show that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). An inmate has a due process liberty interest in being in the general prison population only if the conditions of his or her confinement impose "atypical and significant hardship...in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The Seventh Circuit Court of Appeals has adopted an extremely stringent interpretation of *Sandin*. In this Circuit, a prisoner in disciplinary segregation at a state prison has a liberty interest in remaining in the general prison

population only if the conditions under which he or she is confined are substantially more restrictive than administrative segregation at the most secure prison in that state. *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997). If the inmate is housed at the most restrictive prison in the state, he or she must show that disciplinary segregation there is substantially more restrictive than administrative segregation at that prison. *Id.* In the view of the Seventh Circuit Court of Appeals, after *Sandin* "the right to litigate disciplinary confinements has become vanishingly small." *Id.* Indeed, "when the entire sanction is confinement in disciplinary segregation for a period that does not exceed the remaining term of the prisoner's incarceration, it is difficult to see how after *Sandin* it can be made the basis of a suit complaining about a deprivation of liberty." *Id.*

In the case currently before the Court, Lavin was sent to disciplinary segregation for two months. Nothing in the complaint or exhibits suggests that the conditions that he had to endure while in disciplinary segregation were substantially more restrictive than administrative segregation in the most secure prison in the State of Illinois.

Lavin also asserts that the hearing was not held within 14 days as required by I.D.O.C. policy. He argues that counting the day the ticket was issued, the hearing on July 4 was 15 days later, or one day too late. Lavin's computation is incorrect: when computing a period of days, the day of the event that triggers the time period is excluded from the computation. FED.R.CIV.P. 6(a). Thus, in any given year, July 4 is always exactly 14 days after June 20.

In summary, Lavin's due process claim is without merit, and Count 2 will be dismissed from this action with prejudice.

## COUNT 3

Lavin's third count also stems from that disciplinary proceeding. He alleges that Prange and

Best issued those June 20 tickets out of retaliation for the lawsuit he had pending against other officers at Menard.

Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement.  *See, e.g., Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988).  Furthermore, "[a]ll that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer."  *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002).  Naming the suit and the act of retaliation is all that is necessary to state a claim of improper retaliation.  *Id.*  At issue here is whether Lavin experienced an adverse action that would likely deter First Amendment activity (i.e., filing a lawsuit) in the future, and if the First Amendment activity was "at least a motivating factor" in the Defendants' decision to take the retaliatory action.  *Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009).

This is a question that cannot be resolved at the pleading stages of this case.  Thus, the Court is unable to dismiss this retaliation claim against Prange and Best at this time.

## COUNT 4

Lavin alleges that the conditions in segregation were not to his liking.  The knob on the window was broken, so it could not be opened.  The electricity did not work properly, and some live wires were exposed.  There was insufficient water pressure to properly flush the toilet, but the faucet in the sink sprayed water all over the floor.  There were feces smeared on the walls, assorted bugs were present, and Lavin was not given any cleaning materials.  Moreover, he did not get taken to the yard or other privileges, and he did not always get one shower each week.  Thus, he had to take

sponge baths in the sink.  He filed grievances with Sumners, Hulick, Snyder and Walker, to no avail.

In a case involving conditions of confinement in a prison, two elements are required to establish violations of the Eighth Amendment's cruel and unusual punishments clause.  First, an objective element requires a showing that the conditions deny the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).    The second requirement is a subjective element – establishing a defendant's culpable state of mind.  *Id.*

The Supreme Court announced the standard as follows: "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must be aware from which inferences could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Indeed, "[t]he Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual punishments."  *Id.*

Nothing in the complaint suggests that any of the Defendants created these conditions, nor does Lavin allege that he suffered any real physical injury due to these conditions.  Thus, he has failed to state a claim upon which relief may be granted, and Count 4 will be dismissed from this action.

## COUNT 5

After he was assaulted on June 20 (as described in Count 1), Lavin alleges that he was denied medical attention. He first alleges that the officers involved in the assault (Prange, Best, Krasue, and Priddy) all refused to take him to the medical unit immediately after the incident occurred.  He next alleges that during the two weeks he spent in segregation at Menard, he never once saw a nurse or

making weekly rounds of the housing unit as required by I.D.O.C. policy.  From the exhibits attached to the complaint, it appears that Lavin was taken to the medical unit on June 21, the day after the assault, where he saw Nurse King.  He explained to her what had happened, and that information is recorded in his medical records; he alleges that King "botched" her attempt to diagnose his injuries and failed to provide proper treatment for those injuries.  Lavin was seen again on June 25, and an x-ray was taken.[1]  X-rays were examined and found to be inconclusive.  Lavin requested a referral to an outside specialist, which was denied by either Feinerman or Grubman.  At some point Lavin was also examined by Dr. Ho (an outside radiology specialist), but no effective treatment program was implemented.  Lavin alleges that he requested pain medication, which was either denied or delayed until July 11.

> A deliberate indifference claim requires both an objectively serious risk of harm and a subjectively culpable state of mind.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).  A deliberate indifference claim premised upon inadequate medical treatment requires, to satisfy the objective element, a medical condition "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention."  *Greeno*, 414 F.3d at 653.  The subjective component of a deliberate indifference claim requires that the prison official knew of "a substantial risk of harm to the inmate and disregarded the risk."  *Id.*; *Farmer*, 511 U.S. at 834.  Mere medical malpractice or a disagreement with a doctor's medical judgment is not deliberate indifference.  *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Greeno*, 414 F.3d at 653; *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996).  Still, a plaintiff's receipt of some medical care does not automatically defeat a claim of deliberate indifference if a fact finder could infer the treatment was  "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate" a medical condition.  *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) (citation omitted).

*Edwards v. Snyder*, 478 F.3d 827, 830-31 (7th Cir. 2007).

Applying these standards to the allegations in the complaint, the Court is unable to dismiss

---

[1]  Apparently Lavin suffers from some preexisting back injuries that may have been exacerbated by the June 20 incident.

the claims against Feinerman or Grubman at this time.

The claims against Priddy, Best, Krause and Prange state only that they did not take him immediately to the medical unit on request, which does not support a claim of deliberate indifference. As an outside specialist who was merely consulted, Defendant Ho was not acting under color of state law and cannot be sued under § 1983. *West v. Atkins*, 108 U.S. 42, 49 (1988). The claims against King do not suggest deliberate indifference on her part. At most, Lavin's allegations indicate that she may have been either ineffective or negligent, but such actions or inactions do not give rise to liability for a constitutional violation. Finally, Lavin makes no allegation that any individual defendant acted or failed to act as a result of an official policy espoused by Wexford Health. *See Woodward v. Corr. Medical Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the violation). Accordingly, Priddy, Best, Krause, Prange, King, Ho and Wexford Health are dismissed from this claim.

## COUNT 6

Lavin next states that at the close of his trial, he was supposed to return to Western Illinois Correctional Center on June 2. Despite a twice-weekly bus going from Menard to Western, Lavin alleges that Hulick and Snyder kept him at Menard until July 11 out of retaliation for that lawsuit.

As discussed above in Count 3, prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. At issue here is whether Lavin experienced an adverse action that would likely deter First Amendment activity (i.e., filing a lawsuit) in the future, and if the First Amendment activity was "at least a motivating factor" in the Defendants' decision to keep him longer at Menard. *Bridges*, 557 F.3d at 551.

This is a question that cannot be resolved at the pleading stages of this case.  Thus, the Court is unable to dismiss this retaliation claim against Hulick and Snyder at this time.

COUNT 7

This claim involves Lavin's eye glasses, which were broken on June 20.  Lavin states that he wrote numerous times to Grubman, Summers, Hulick, Snyder and Walker during his three-week stay at Menard, trying to get an appointment for an examination to have his glasses replaced.  Lavin alleges that their collective failure to take action amounts to cruel and unusual punishment.

The standards for an Eighth Amendment deliberate indifference claim are set forth above with Count 5.  *See Estelle*, 429 U.S. at 107; *Farmer*, 511 U.S. at 834; *Edwards*, 478 F.3d at 830-31. The Court doubts that being without eyeglasses for three weeks constitutes a serious medical need. Lavin makes no allegation that he suffered any physical harm due to his lack of glasses; he was simply inconvenienced in that he was unable to read.  Thus, he has failed to state a claim upon which relief may be granted, and Count 7 will be dismissed.

COUNT 8

Lavin's final claim is that out of retaliation for the lawsuit, Defendant Bendinger subjected him to constant harassment.  Lavin also alleges Bendinger assaulted him by kneeing him in the groin.  Lavin states that he filed grievances over these issues with Sumners, but he got no response.

The standards involving retaliation and use of excessive force are set forth above in Counts 1 and 3.  Applying these standards to the allegations in the complaint, the Court is unable to dismiss this claim against Bendinger at this time.

However, "a state's inmate grievance procedures do not give rise to a liberty interest protected by the due process clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1995).  The

Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution. *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091 (7th Cir. 1982). Moreover, Lavin does not have a constitutional right to receive a response to his grievances. Thus, Defendant Sumners is dismissed with prejudice from this claim.

## DISPOSITION

IT IS HEREBY ORDERED that **COUNT 2, COUNT 4** and **COUNT 7** are **DISMISSED** from this action with prejudice. Further, Defendants **GRAIG, HO, JOHNSON, KING, SUMNERS, WALKER, WEXFORD HEALTH** are **DISMISSED** from this action with prejudice. Plaintiff is advised that, within the Seventh Circuit, dismissal of these claims and defendants count as a strike for purposes of § 1915(g). *See George v. Smith,* 507 F.3d 605, 607-08 (7th Cir. 2007); *Boriboune v. Berge,* 391 F.3d 852, 855 (7th Cir. 2004).

The Clerk is **DIRECTED** to prepare Form 1A (Notice of Lawsuit and Request for Waiver of Service of Summons) and Form 1B (Waiver of Service of Summons) for Defendants **BENDINGER, BEST, FEINERMAN, GRUBMAN, HULICK, KRAUSE, PRANGE, PRIDDY,** and **SNYDER**. The Clerk shall forward those forms, USM-285 forms submitted by Plaintiff, and sufficient copies of the complaint to the United States Marshal for service.

The United States Marshal is **DIRECTED**, pursuant to Rule 4(c)(2) of the Federal Rules of Civil Procedure, to serve process on Defendants **BENDINGER, BEST, FEINERMAN, GRUBMAN, HULICK, KRAUSE, PRANGE, PRIDDY,** and **SNYDER** in the manner specified by Rule 4(d)(2) of the Federal Rules of Civil Procedure. Process in this case shall consist of the complaint, applicable forms 1A and 1B, and this Memorandum and Order. For purposes of

computing the passage of time under Rule 4(d)(2), the Court and all parties will compute time as of the date it is mailed by the Marshal, as noted on the USM-285 form.

With respect to former employees of Illinois Department of Corrections who no longer can be found at the work address provided by Plaintiff, the Department of Corrections shall furnish the Marshal with the Defendant's last-known address upon issuance of a court order which states that the information shall be used only for purposes of effectuating service (or for proof of service, should a dispute arise) and any documentation of the address shall be retained only by the Marshal. Address information obtained from I.D.O.C. pursuant to this order shall not be maintained in the court file, nor disclosed by the Marshal.

The United States Marshal shall file returned waivers of service as well as any requests for waivers of service that are returned as undelivered as soon as they are received.  If a waiver of service is not returned by a defendant within **THIRTY (30) DAYS** from the date of mailing the request for waiver, the United States Marshal shall:

- Request that the Clerk prepare a summons for that defendant who has not yet returned a waiver of service; the Clerk shall then prepare such summons as requested.

- Personally serve process and a copy of this Order upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure and 28 U.S.C. § 566(c).

- Within ten days after personal service is effected, the United States Marshal shall file the return of service for the defendant, along with evidence of any attempts to secure a waiver of service of process and of the costs subsequently incurred in effecting service on said defendant.  Said costs shall be enumerated on the USM-285 form and shall include the costs incurred by the Marshal's office for photocopying additional copies of the summons and complaint and for preparing new USM-285 forms, if required.  Costs of service will be taxed against the personally served defendant in accordance with the provisions of Federal Rule of Civil Procedure 4(d)(2) unless the defendant shows good cause for such failure.

Plaintiff is **ORDERED** to serve upon defendant or, if appearance has been entered by

counsel, upon that attorney, a copy of every further pleading or other document submitted for consideration by this Court. He shall include with the original paper to be filed with the Clerk of the Court a certificate stating the date that a true and correct copy of any document was mailed to defendant or his counsel. Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint, and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this cause is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter is hereby **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Plaintiff is **ADVISED** of his continuing obligation to keep the Clerk and each opposing party informed of any change in his whereabouts during the pendency of this action. This notification shall be done in writing and not later than seven (7) days after a transfer or other change in address occurs. Failure to provide such notice may result in dismissal of this action. *See* FED.R.CIV.P. 41(b).

**IT IS SO ORDERED.**

**DATED this 27th day of May, 2010.**

**s/ Michael J. Reagan**
**MICHAEL J. REAGAN**
**United States District Judge**